The next case is Harrington v. DVA 23-1752. Mr. Chancellor Fowler, you've reserved 5 minutes. Your time for rebuttal. Yes, Your Honor. Okay. We're ready when, let's wait just a little bit here. Good morning, Your Honors, and may it please the Court. My name is Jason Fowler. I represent Mr. Harrington in this appeal. There is no dispute at this point that the agency failed to consider the evidence that Mr. Harrington presented below as mitigating. The agency instead argues that the evidence simply doesn't qualify as mitigating for two reasons, which I'll address. But to the extent the Court agrees that the evidence is properly considered as mitigating, that alone is sufficient for remand to the Board for reconsideration of the penalty in light of its failure to consider the mitigating circumstances. What are those? What are the mitigating circumstances? The mitigating evidence that was not considered was number one, that the police report Mr. Harrington is charged with releasing had in fact been authorized for release. But when he went to look into the database, that was not known. His friend thought VA may have been up to no good, so he was looking to see if, as turned out to be the case, and presumably to Mr. Hooker's disappointment, the VA had in fact given him what it had. So he was getting more information than, yes, he was getting new information, namely the identity of the earlier email and the actual report. Well, I'm not sure that that's right, Your Honor, because it was clear that the evidence that was provided, the police report that was provided to Mr. Hooker in the first instance, the information, the substance was exactly identical to the photograph that Mr. Harrington provided. It was clear. It wasn't clear to Mr. Harrington before he went into the database. In fact, that's what he was trying to find out. Well, Mr. Hooker forwarded him the email that contained the police report, so Mr. Harrington had that police report. He had a typescript. I'm going to just call it a typescript. He didn't have the original or even a photograph of the original. And I thought his email said, I suspect there's information that wasn't put in my typescript. That's right. That's right. And the issue was not whether Mr. Harrington was right to say he was permitted, he thought he was permitted to disclose this. The question is whether the agency has reviewed this evidence in the first instance. The agency would have been entitled, had it done a proper analysis of the Douglas factors and Mr. Harrington's evidence, to discount it, to make credibility determinations. And the evidence, again, is that as it turned out, what he provided was the same as what had already been provided. It's that. Even though he didn't know that, and indeed he was trying to help Mr. Hooker figure that out. Do I have the name right, Mr. Hooker? That's right, Mr. Hooker. It's that, and it's also that he believed he was authorized to provide it because it had already been authorized for release and had, in fact, been released to Mr. Hooker. So they're related, but they're different. What exactly did he provide? Did he pull the information up on the system, on the screen, and then he photographed the screen? That's right, Mr. Traynor. With the screenshots that he took. That's right. He took a photograph and emailed it to Mr. Hooker. It was, as an agency investigator testified in the first removal hearing, the information was identical. There was nothing in addition to what had been originally provided that Mr. Traynor was authorized to provide. It doesn't matter that the information had been provided before on a FOIA request. It goes to Mr. Harrington's... Let me ask you this. Do employees generally, do other police officers generally have authorization to pull up confidential information and photograph it? I would think not. The difference here is that Mr. Harrington believed it wasn't confidential, and there's no dispute that it wasn't confidential. Correct. I mean, he was found liable for accessing the VA's law enforcement database without authorization or legitimate purpose. Right? Correct. And so, what happened here was he was removed because he was deemed to be a security risk because he could no longer be trusted with his access to this law enforcement database. And so, that was the characterization of the seriousness of the offense. It wasn't an allegation that he had disclosed information above and beyond what was already released through FOIA. And so, when I think about this case, I wonder what if Mr. Harrington was a bus driver, and then he was arrested for drunk driving, and then he was removed from his bus driver position, and then he would, I mean, it wouldn't be a mitigating circumstance that he didn't run anybody over when he was drunk driving. The fact that he was engaged in this very dangerous behavior alone is enough for the basis for removal, and the fact that he didn't run anyone over isn't a mitigating circumstance for that. Well, I'm not sure that the analogy is right on. Again, this information has already been released. And again, to be clear, our argument is not that Mr. Harrington... The information has already been released, but the nature of the offense was rooting around in the database when there wasn't a legitimate reason to do that, and then photographing a file displayed on the screen like a James Bond spy. Maybe. I mean, look, our argument is not that Mr. Harrington can't be removed. That's clear. We are not saying that it is improper to remove him in light of the mitigating circumstances. What we are saying is that it is the law that the agency was required to evaluate the evidence that he provided. As this Court has held, if it didn't believe Mr. Harrington, if it thought that Mr. Harrington lacked credibility, if it discounted the mitigating evidence for any other reason, it was required to state that on the record. What evidence would you say was not considered? The agency did not consider that, number one, the police report that he provided had already been released in response to a FOIA request, and that he believed as a result that he was entitled to share it with Mr. Hooker. Now, again, the agency is entitled to find him not credible, to find that it still is maybe not even mitigating, but instead aggravating in light of all the circumstances, in the same way that the Court found it in the Vestal case. But the point is that the law is that the agency is required to consider it in reaching a penalty determination under the Douglas factors. You mentioned the Douglas factors, which factors were not considered? Factor one, which would be the nature and seriousness of the offense, which itself contemplates that the factor can be aggravating or mitigating, depending on whether, for example, the intent is intentional, whether it was inadvertent or technical. And importantly, in the removal decision, the agency-based removal, the penalty of removal, not only on intent, but on knowing an intentional disclosure. Meaning, the agency removal decision assumed that he knew what he was doing was wrong, which, again, there's no dispute that they didn't take it into account, but they took the process into account. They presumed that he did know what he was doing was wrong. There's something that always stuck in my mind about this case. Your argument is that Mr. Harrington, that his conduct was mitigated because the information had been released before, and Mr. Harrington knew that, and he thought he was just releasing information that had been released, and somehow that's a mitigation factor. But Mr. Harrington also knew, it seems to me, that what he was doing was not legal. I'm sorry. Because he went back, right? I mean, he went back when nobody was around. He went into a room, turned on the machine. All those were acts. He had no permission to be in the room where he was at, access to the system. Well, he had access to the system, or else he wouldn't have been able to take the photograph. Again, I'm not arguing that his penalty must be mitigated. Did he have access to those employment records? Did you hear me? Yes, Your Honor. I think the agency found that he was not entitled to access those records. That was part of the penalty determination. What the agency failed to do, and what it was required to do, was to give Mr. Harrington a fair shake, to at least address the evidence that he provided and reach a conclusion based on the totality of the evidence. As it stands, they didn't do it. Is the agency entitled on remand to decide to remove him? We hope that it doesn't, but yes, it is, so long as it takes into account all the evidence that was presented to the agency, and there's no dispute that they did not consider that evidence. Does the joint appendix that's before us include, I think it does, but I'm going to ask you to locate it for me. Yes, Your Honor. Whatever he told the agency between the proposed removal and the removal decision. I'm sorry, between when? Between the proposal to remove him and the removal. That is, he's charged with something? He had an opportunity to come in and say, yes, here's why I'm not guilty. If you're referring to this, so there were two removal proceedings, long history here. Right. But he was, this court reversed his original removal, sent it back for a proper evaluation of the penalty and the charges under the Douglas factors. The same day he started, they re-initiated removal proceedings, and so to some extent the agency had the basis or had the benefit of the record that had happened before, right, because they were on remand. I'm looking at the appendix here. And was there a, so there were potentially at least two opportunities, each one between proposal one, removal one, proposal two, removal two. Did he go and talk to the deciding official or submit something at each of those, or is it entirely based on what he had said between proposal one and removal one? No, it's, so I do not believe that he specifically filed something after the second notice of removal. Okay. So the record of his coming and telling the agency, here's why it's not as bad as it looks is entirely from the first draft. That's not correct, Your Honor, because the pre-hearing and the hearing itself, for example, Mr. Harrington testified at the hearing. And were in the board. Yes, Your Honor. Okay, yeah, great. So I'm only interested right now in what he told the decision-makers before they made their decision, or the decision-maker before he made his. Okay. I'm running out of my time. I'm running into my rebuttal time. I'll look for that. I'm not sure of the question. Yeah, let me check on that, Your Honor. I'm not positive and don't want to mistake the record. Okay, while you're thinking about it, what I am recalling was when I think I looked at that material, he didn't say very much about how he thought it was okay for him to go into this system. And I could be wrong about that, but that's what I was wanting to explore. Yes, Your Honor. I think you're right. I think you're right, but there was a fair amount of that in the record. In the testimony before the board. And before in the original review.  Okay. Mr. Kushner. Thank you, Your Honor. Good morning. Excuse me. Before I begin, Judge Toronto, I'd like to answer your question directly. In the second removal proceeding, Mr. Harrington declined to participate at all. If you take a look at page 113 of the appendix, that's the deciding official's decision in this case. In paragraph 2, the deciding official stated, in reaching this decision I carefully considered all the evidence developed. I note for the record that you did not participate in the oral reply scheduled for you and did not provide a written reply within the designated time frame. Okay. So now go back to the first removal decision. What did, after that one was proposed, what did he come in and tell the deciding official? Where's that in the record? So if you take a look at the original deciding official's decision, that's at page 1428 of the joint appendix. Again in paragraph 2, it looks like Mr. Harrington did provide some written reply and an oral reply initially. He then failed to respond to an opportunity for a second oral reply when the deciding official had some additional questions. It's not entirely clear what he said exactly, but I will note that that first removal proceeding I'm sorry, is that what follows at page 1445? Is that a document that he submitted saying here are the charges and a lot of, and then I think a lot of this is his saying here's why those charges don't hold up? Is that? That may be what this is, Your Honor. But I will note that that first removal proceeding was vacated by this court. I guess the table of contents of the joint appendix describes those pages as response to notice of proposed removal, October 3, 2017. So it does appear to be Mr. Harrington's response to that initial removal proceeding. But that initial removal proceeding was vacated by this court. Mr. Harrington had to be reinstated into his position with the VA, and then a new removal proceeding had to be initiated. That second removal proceeding was for slightly different charges. The board originally sustained only two of the three charges against Mr. Harrington, so the second removal proceeding was only for two charges as opposed to the original three. And we think that Mr. Harrington would want to participate in that second removal proceeding. That's the proceeding before the court today. So if I may address some of the arguments that my friend on the other side has brought up. The petitioner essentially argues in this case that both the VA and the board failed to consider intentionality when deciding what the appropriate penalty was. But the record shows that that simply is not true. The VA on page 42 of the joint appendix considered the intentional and deliberate nature of Mr. Harrington's conduct as an aggravating factor that warrants removal. And the board administrative judge on page 20 of the joint appendix credited testimony by the deciding official finding the conduct at issue to be intentional. That treatment of intentionality by both the VA and the board is entirely consistent with the way this court has treated intentionality before. Only a few years ago in Vestal v. Department of the Treasury, this court explained that an agency establishes intentionality when it shows that an employee intended to commit the act that the employee committed, even if the employee did not intend for that act to violate an applicable policy or regulation. And that's exactly what happened here. There is no dispute that Mr. Harrington I'm sorry. In that circumstance, I intend to commit the act. So that, I think you just said, that's perfectly consistent with But I thought it was just fine. And you think if it were true that he thought it was just fine, that that wouldn't be a mitigating circumstance? It would not go to intentionality, Douglas Factor I. Intentionality under Douglas Factor I means he intended to do what he did. And again, I'll give you the example of Vestal, Judge Taranto. In Vestal, we had an IRS employee who sent confidential taxpayer information to her attorney. Never mind the listing of Douglas Factors, which is just a convenient way of organizing stuff that's relevant. So is a belief on the part of the removed employee, not yet removed employee, that what he did was fine really not a mitigating circumstance? It's not, Your Honor. The subjective belief of the employee about what the rules mean does not mitigate his actions. It doesn't mitigate the actions generally. And it certainly doesn't mitigate the actions. I guess maybe I'm confused, but I'm sort of befuddled. I thought an innocent mind might not be a defense, but it sure as heck is mitigating. Well, it's Everywhere. So, Your Honor, again, I'll give you the example of Vestal. The employee in Vestal thought that by sending the taxpayer information to her attorney, she was not violating any rule because it's covered by the attorney-client privilege. In her mind, she believed what she was doing was perfectly compliant with the rules applicable to her. I'm sorry. And we said that's not mitigating, or did we say that's not enough to undo the penalty decision? I believe in that case the board said that that does not mitigate the decision, and this court affirmed and said what matters Mitigate the decision is not, that's not the correct, and maybe they said that. I'm sorry. I think I misspoke. The board in Vestal It's right at the heart of what I'm getting at. It is. You're absolutely right. I believe the board in Vestal decided that the belief, the subjective belief, that what the employee did did not violate any rule or policy, that did not mitigate the penalty that she received. And this court on appeal affirmed and agreed. It may not have mitigated the penalty. I mean, at the end of the day, maybe the penalty was mitigated, but are you saying that it's never a factor in the analytical process? It's not a factor? It's not a mitigating factor? So I wouldn't say it's never a factor, Judge Rayner. I think it might depend on the specific rules and policies that the employee is charged with violating. If there's a rule or policy that talks about sort of a mens rea. Explain though this is not one of the exceptions that you just noted. Right. So in this case, if we look at the particular VA handbook provisions and Bay Pines privacy policy provisions that Mr. Harrington violated, those have no mens rea element. They don't talk about willfulness. They don't talk about intentionality. All they focus on is authority or the lack thereof. And they say if an employee takes certain actions without the proper authority, that employee violates these rules. And here, not only did Mr. Harrington lack that authority, but he didn't even try to seek that authority. There is no dispute here that there was no authority, there was no legitimate purpose of those actions. I'm an employee. I show up to work on the first day, and they tell me, Judge Rayner, here's your entry badge. You know, go to work in room 201. I go to room 201 and pass security with my entry badge. Then it turns out that that entry badge is issued wrong. And I know I did have authority to enter the room. I know I did have authority to do that. That's not a mitigating factor? I would say it would depend on the particular policy that you're violating. Well, it seems to me what Mr. Harrington is arguing is that this factor was not considered. Not that the factor was mitigating itself, and therefore the conclusion is wrong. He's simply saying this mitigating factor was not considered at all. It should have been. Well, Your Honor, the only mitigating factors that Mr. Harrington seems to talk about here is the outcome of his actions, the fact that the version of the report that he produced to Mr. Hooker ended up containing the same information as what Mr. Hooker already had through the FOIA process, and his subjective belief about what the rules and policies meant. And neither one of those, not only are they not mitigating, but neither one of those is relevant to the charges with which Mr. Harrington was charged. Again, those provisions of the VA handbook and the privacy policy, those focus on authority. And we have a complete lack of authority here. It is undisputed that we have a complete lack of authority here. And the removal was therefore appropriate. Didn't the board also find that it strained credulity that Mr. Harrington didn't know that he shouldn't have been, I don't know, accessing this database and taking pictures of information? Yes, that's absolutely correct, Your Honor. This record — Let me just say, I mean, it seems to me that is a point that directly addresses what we've just been talking about. That's a different kind of intentionality found by the board than the intent to walk into the room and turn on the computer. Yes, and I would agree with that. The record is replete with evidence of trainings that Mr. Harrington underwent over the years, again and again, about the very provisions that he violated in this case. So, Judge Cheng, you're absolutely right. The board found that any argument that he was unaware of these rules or that he didn't understand that surreptitiously going into a restricted law enforcement database and taking a snapshot and then sending it to someone outside the agency, the idea that he didn't know all of that violated rules and policies, it strains credulity. And we certainly agree with that. By the way, what is the specific evidence for the surreptitious characterization? I would say it's his failure to seek authority from anyone about accessing the database, about accessing a police report. You were using the characterization, including right from the beginning of your brief, to paint a picture of sort of mental state. And I guess I went looking, maybe not hard enough, for the evidence that somebody said, you know, he specifically waited until 85% of the employees in the relevant area were out for lunch. And, you know, there's a picture of him walking carefully and looking like this and before he's opening the door, checking that nobody sees him and that he closes the blinds. I mean, something about surreptitiousness, and I didn't find it. And I don't think anything quite like that is anywhere in the record. I would say that that characterization is not a characterization of Mr. Harrington's state of mind. It is a characterization of his actions and his failure to take the actions that were required. So we know, for instance, that Mr. Harrington had no connection to the police report that was issued in 2016 in connection with that disturbance. This is not a big point in my mind. You used the surreptitious characterization early in your brief to paint a picture, and I wasn't sure that that was warranted. I understood, Your Honor, and if you don't think it's warranted, you can certainly feel free to disregard it. The only reason I used it is because we know Mr. Harrington had no legitimate purpose in doing any of the things he did, and we know he did them anyway without seeking authority from anyone. In my mind, that shows that the conduct was surreptitious. But if you disagree, then certainly feel free to disregard. If there's no further questions, we ask the Court to affirm. Thank you. Thank you. A few points, Your Honor. Just to address your comment, Judge Chen. The comment about strain credulity related to an argument that is not raised on appeal, it also is by the Board itself. If the Board found that an argument had not been addressed by the agency, it should have remanded to the agency for consideration of the evidence. But you're referring to Appendix 4. Again, the Board made an entirely different analysis of the argument that is on appeal, which spans Appendix 4 to 5, regarding the argument that the appellant's photographing or releasing the information was not improper because it had been previously released under the Freedom of Information Act. So the strain credulity related to a different argument. Just to address your point, Judge Toronto, lack of knowing or intent is clearly a mitigating circumstance. It's baked into the Douglas Factors. Douglas Factor 1 is not about intentionality. It uses intentionality as an example. The Douglas Factor 1 addresses the nature and circumstances of the offense. The MSPB itself has found on a number of occasions that it is very relevant to the penalty. In the Bolts case that we cited, it says the absence of intent by the appellant is an important mitigating factor. Because your conduct was unintentional, the charge is less serious than charged. The Bartram case held that because the sustained misconduct was unintentional, less serious than charged, that mitigation was warranted. And there you think the word unintentional is being used to describe something about the understanding of wrongfulness, not the nature of the act.  Because in some sense every act is intentional. The person intends to do the thing that they did. What about the other thing that you told me you were going to get back to me? I think you're right, Your Honor. Your Honor, Mr. Harrington did not submit a reply or participate in an oral reply to the notice of proposed removal. But I don't think you can ignore that, again, this happened the day he came back following a remand from this court requiring him to be reinstated. Is the October 2017, the material at A1445, October 30, the response, was that part of the record of the second removal proceeding? I don't know. Certainly it was before the agency. And the agency... That's what I mean. I mean the second removal proceeding before the agency. And the deciding official says, I've considered everything in the record, but I don't know what he thought the record was. I don't know. Let's assume for a minute that this material was before. What in this material... In this material, where did Mr. Harrington say, and I thought what I was doing I had authority to do? At A1445? Yes. It's about a 10-page document. Yep. Okay. A1455, Your Honor. Where's that? I mean, I know where. In A1455, paragraph 5, he says, the information I took, information I took a picture of was already authorized for release, and now the administration is trying to terminate me for furnishing it. It's more about the consequences than it is about what he understood at the time? Thank you, Your Honor. But Mr. Harrington was proceeding per se. I mean, I think you can tell from the, from the, you know, his submissions to the board that he wasn't, he wasn't aware. And do you know, did the deciding official have Mr. Hooker's email that prompted Mr. Harrington to go seek this information? Or did that come in only in the board proceeding? Do you know? I'm sorry. Did the deciding official have which email? Didn't Mr. Hooker send his friend an email saying, I'm really suspicious about what they gave me. Can you go find the original so I can see if they're hiding something from me? I believe it was, Your Honor, or else I'm not sure how it made it into the record. Could have come in in the board proceeding. I don't know, Your Honor.  These records are a little bit difficult to make heads or tails of sometimes. Thanks. Okay. We have a vote. Thank you, Your Honor. Let's have a vote.